IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SCOTT ALLEN SALATA, | ) Case No. 1:20-cv-657 |
| | ) |
| Plaintiff, | ) |
| | ) MAGISTRATE JUDGE |
| v. | ) THOMAS M. PARKER |
| | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER** |
| Defendant. | ) |

**I.  Introduction**

Plaintiff, Scott Allen Salata, seeks judicial review of the final decision of the Commissioner of Social Security, denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This matter is before me pursuant to 42 U.S.C. § 405(g), and the parties consented to my jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. ECF Doc. 16. Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, the Commissioner's final decision denying Salata's application for DIB must be AFFIRMED.

**II.  Procedural History**

On April 16, 2012, Salata applied for DIB and SSI.[1] (Tr. 385-92).[2] Salata alleged that he became disabled on August 31, 2011, due to: "1. Copd; 2. chronic pain; 3. depression;

---

[1] For reasons stated in this summary of the procedural background, Salata's SSI claim is not at issue in this case.
[2] The administrative transcript appears in ECF Doc. 12 through ECF Doc. 12-7.

4. impaired walking and standing; [and] 5. arthritis in neck, spine, left foot." (Tr. 385, 387, 419). The Social Security Administration denied Salata's applications initially and upon reconsideration. (Tr. 147-89). Salata requested an administrative hearing. (Tr. 190). ALJ Penny Loucas held hearings on Salata's claims on May 7, 2014; July 2, 2014; and March 2, 2015. (Tr. 41-146). The ALJ denied Salata's claims in an April 30, 2015 decision. (Tr. 11-40). On October 7, 2015, the Appeals Council denied further review. (Tr. 1-5).

On February 7, 2017, this court vacated the decision denying Salata's DIB claim and remanded the claims to the Commissioner for further proceedings. CM/ECF for N.D. Ohio Case No. 1:15-cv-2430, Doc. 31; (Tr. 4336-89). On June 23, 2017, the Appeals Council remanded the case to the ALJ for further consideration. (Tr. 4390-95). The ALJ held a hearing on January 10, 2018, and a supplemental hearing on October 19, 2018. (Tr. 4245-313). The ALJ found that Salata was not disabled from August 31, 2011 through September 30, 2015, and denied his claim in a February 15, 2019, decision. (Tr. 4199-244). On January 24, 2020, the Appeals Council denied further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 4193-98). On March 27, 2020, Salata filed a complaint to obtain judicial review. ECF Doc. 1.

### III. Evidence

#### A. Personal, Educational, and Vocational Evidence

Salata was born on December 16, 1962, and he was 48 years old on the alleged onset date. (Tr. 385). Salata was 52 years old on the date last insured. Salata completed his general education diploma in 1981, and he had vocational training in heating, air conditioning, and refrigeration. (Tr. 420). Salata had past work as a production machine operator, stock handler, and truck driver, but the ALJ determined that he was not able to perform any of his past relevant work. (Tr. 420, 428, 4227).

B.     **Relevant Medical Evidence**

In her written decision, the ALJ exhaustively summarized the relevant medical evidence. *See* (Tr. 4216-27). Salata does not challenge the ALJ's summary of the medical evidence or submit new evidence. And he makes no challenge to the ALJ's findings concerning the medical issues. *See generally* ECF Doc. 14; ECF Doc. 17. And independent review does not reveal any material inconsistencies between the ALJ's summary of the facts and the record before this court. *Compare* (Tr. 4216-27), *with* (Tr. 501-4192, 4708-5572). Thus, the court adopts and incorporates by reference the ALJ's summary of the medical evidence.[3]

C.     **Vocational Expert Testimony and Report**

Salata focuses his challenge on the ALJ's findings at Step Five of the sequential evaluation; thus, the court will summarize the pertinent portions of the record. On January 10, 2018, the ALJ held a hearing, at which Darren Wright, a vocational expert ("VE"), testified. (Tr. 4290-313). The ALJ asked the VE whether an individual with Salata's age, education, and experience, could work if he were limited to:

> light exertion; can occasionally climb ladders, ropes and scaffolds; can occasionally stoop, kneel, crouch and crawl; can occasionally climb stairs and frequently climb ramps; is unlimited in balancing and kneeling; overhead reaching is limited to occasional bilaterally; handling and fingering and feeling are unlimited; avoid concentrated exposure to extreme temperatures, humidity and respiratory irritants; can engage in simple/routine type work or work that is further defined as work that can be learned within 30 days or with a short demonstration.
>
> Can maintain concentration, persistence and pace for unskilled work or work that is further defined as work that can be learned within 30 days or with a short demonstration; is limited to routine type work without strict production quotas; is

---

[3] *See Biestek v. Comm'r of Soc. Sec.*, No. 16-cv-10422, 2017 U.S. Dist. LEXIS 47762, at *2-3 (E.D. Mich. Feb. 24, 2017) (adopting an ALJ's summary of medical evidence and hearing testimony), *adopted by* 2017 U.S. Dist. LEXIS 47209 (E.D. Mich. Mar. 30, 2017), *aff'd by* 880 F.3d 7787 (6th Cir. 2017), *aff'd* by 139 S. Ct. 1148 (2019). *See also Paulin v. SSA*, 657 F. Supp. 2d 939, 942 (M.D. Tenn. 2009); *Hase v. Colvin*, 207 F. Supp. 3d 1174, 1177 (D. Or. 2016).

3

> limited in interacting with the general public, co-workers and supervisors to speaking, signaling, taking instructions and carrying out instructions.

(Tr. 4292). The VE said that such an individual could work in such representative occupations as: (1) a racker (429,000 jobs nationally); (2) an ironer (251,000 jobs nationally); and (3) a mill stenciler (251,000 jobs nationally). (Tr. 4293).

The ALJ asked the VE if a hypothetical individual with Salata's age, education, and experience could work if he were limited to:

> light exertion; limit standing and walking to four hours, maximum; no climbing of ladders, ropes or scaffolds; can occasionally stoop, kneel, crouch and crawl; can occasionally climb stairs and frequently climb ramps; balancing and kneeling can be performed frequently; overhead reaching is limited to occasional bilaterally; handling, fingering and feeling are unlimited; avoid concentrated exposure to extreme temperatures, humidity, respiratory irritants; avoid working at unprotected heights, operating dangerous equipment such as power saws and jackhammers and walking on rough or uneven terrain.
>
> As for mental, can understand, remember and apply information, to engage in simple work or further defined as unskilled work or work that is further defined as work that can be learned within 30 days or with a short demonstration; can maintain concentration, persistence and pace for unskilled work as just defined; is limited to routine type work without strict production quotas; is limited to interacting with general public, co-workers and supervisors; to speaking, signaling, taking instructions and carrying out instructions.

(Tr. 4293-94). The VE said that hypothetical individual could not perform the three positions he had identified in response to the first hypothetical, but such an individual could work in such representative occupations as: (1) a laundry sorter (471,000 jobs nationally); (2) a marker (2,016,000 jobs nationally); and (3) a checker (59,000 jobs nationally). (Tr. 4294, 4296). The VE also said that such an individual could work as an inspector/hand packager or as an electrical accessory assembler. (Tr. 4296-97).

The ALJ asked whether any work would be available for the hypothetical individuals identified in the first and second questions if those individuals would be off task for 15 percent

4

of the workday due to psychological or physical symptoms. (Tr. 4298). The VE said that such a limitation would be work-preclusive. (Tr. 4298). The VE also testified that if the individuals identified in the ALJ's hypotheticals were unable to frequently lift or carry any weight, they would be restricted to sedentary exertion and could not perform the jobs he had identified. (Tr. 4299). The VE said that the jobs he had identified would still be available if the individuals were only able to carry objects for four hours in an eight-hour workday because the positions he had identified involved pushing/pulling, not carrying. (Tr. 4303).

Salata's counsel asked the VE what occupational base remained for the hypothetical individuals described in the ALJ's hypotheticals. (Tr. 4304). The VE said that 20 occupations at the light exertion level remained available to the individual identified in the first hypothetical, and 17 of those occupations remained available to the individual identified in the second hypothetical. (Tr. 4304-05). The VE said that there was a total of 1,572 possible occupations that fit into the light, unskilled work category. (Tr. 4307). The VE agreed with Salata's counsel that there was a "significant erosion of the unskilled/light occupational base" in the ALJ's second hypothetical. (Tr. 4307). The ALJ determined that a follow-up hearing should be scheduled and asked the VE to go through his notes, identify the 20 and 17 occupations that would be available, and to determine how many jobs would be available for each. (Tr. 4310).

On October 19, 2018, the ALJ held the follow-up hearing. (Tr. 4245-65). At the hearing, the VE said that he had shredded his notes from the previous hearing. (Tr. 4254). The ALJ repeated the hypotheticals, noted that the issue was whether there was significant enough erosion of the available jobs that Salata would meet the requirements at Step Five, and stated that the numbers of the jobs that the VE had given in the first hearing would qualify as a "significant number of jobs" available in the national economy. (Tr. 4253, 4255-56). On examination by

5

Salata's counsel, the VE testified that only about 50% (or roughly 67 occupations) of the sedentary occupational base would be available based on the non-exertional limitations identified in the ALJ's hypotheticals. (Tr. 4259-61). The VE said that "millions" or "well over a million" jobs would be represented by the remaining sedentary occupations. (Tr. 4262). The ALJ directed the VE to submit a report identifying the 17 occupations that the VE had said would be available to the individual identified in the ALJ's second hypothetical and the number of jobs those occupations would represent. (Tr. 4264).

On October 10, 2018, the VE submitted a report, identifying: (1) marker (2 million jobs); (2) checker I (72,000 jobs); (3) garment sorter (256,000 jobs); (4) ironer, sock (402,000 jobs); (5) folder (402,000 jobs); (6) potato chip sorter (537,000 jobs); (7) rag inspector (537,000 jobs); (8) bagger (537,000 jobs); (9) ironer (256,000 jobs); (10) folding machine operator (85,000 jobs); (11) mail clerk (86,000 jobs); (12) shipping-and-receiving weigher (72,000 jobs); (13) routing clerk (671,000 jobs); (14) flatwork tier (537,000); (15) microfilm mounter (209,000 jobs); (16) ticket seller (3.5 million jobs); (17) ticket taker (124,000 jobs). (Tr. 4698).

**IV.    The ALJ's Decision**

On February 21, 2019, the ALJ issued a written decision denying Salata's claims. (Tr. 4202-34). The ALJ made the following paraphrased findings relevant to Salata's arguments on judicial review:

> 5. Between August 31, 2011 and January 31, 2012, Salata was able to perform a range of light work. He could lift and carry up to 10 pounds frequently and up to 20 pounds occasionally. He could also stand or walk for *six hours* in an eight-hour period and he could sit for six hours. He also had the following non-exertional limitations. He could occasionally climb ladders, ropes, and scaffolds. He could occasionally stoop, kneel, crouch, and crawl. He could occasionally climb stairs and he could frequently climb ramps. He was not limited in terms of balancing or kneeling. He could occasionally reach overhead with both upper extremities. He was not limited in terms of handling, fingering, or feeling objects. He could not work in jobs where he would have concentrated

6

exposure to extreme temperatures, humidity, and/or respiratory irritants. (Tr. 4214)

Mentally, Salata was able to perform simple routine type work, defined as work that can be learned within 30 days or with a short demonstration. Salata could also maintain his attention, pace himself and persist at tasks associated with unskilled work, defined as work that can be learned within 30 days or with a short demonstration, provided that the tasks were routine, and provided that the work was not subject to strict production quotas. The claimant was further limited to working in jobs where interactions with coworkers, supervisors, and members of the public would have been limited to speaking, signaling, taking instructions and/or carrying out instructions. (Tr. 4215).

6. Between February 1, 2012 and December 9, 2013, Salata was able to perform a range of light work. He could lift and carry up to 10 pounds frequently and up to 20 pounds occasionally. He could also stand or walk for *four hours* in an eight-hour period and he could sit for six hours. He also had the following non-exertional limitations. He could not climb ladders, ropes, or scaffolds. He could occasionally climb stairs and he could frequently climb ramps. He could occasionally stoop, kneel, crouch, and crawl. He could frequently balance. He could occasionally use both upper extremities to reach overhead. He was not limited in terms of handling, fingering, or feeling. He needed to avoid concentrated exposure to extreme temperatures, humidity, and respiratory irritants. He could not work on unprotected heights or operate dangerous equipment such as power saws and jackhammers. He could not walk on rough or uneven terrain. His mental limitations were the same as those identified above. (Tr. 4215).

7. Between December 10, 2013 and September 30, 2015, Salata was capable of performing a range of light work. He could lift and carry up to 10 pounds frequently and up to 20 pounds occasionally. He could also stand or walk for *six hours* in an eight-hour period and he could sit for six hours. He also had the following non-exertional limitations. He could occasionally climb ladders, ropes, and scaffolds. He could occasionally stoop, kneel, crouch, and crawl. He could occasionally climb stairs and he could frequently climb ramps. He was not limited in terms of balancing or kneeling. He could occasionally reach overhead with both upper extremities. He was not limited in terms of handling, fingering, or feeling objects. He could not work in jobs where he would have concentrated exposure to extreme temperatures, humidity, and/or respiratory irritants. And, again, his mental limitations remained the same as those identified above. (Tr. 4215-16).

9. Salata was a "younger individual" (18 to 49) on August 31, 2011. He became a "person closely approaching advanced age" on December 15, 2012 (when he turned 50). He remained in that age category through September 30, 2015 (his date last insured). (Tr. 4228).

7

10. Salata had a high school education by virtue of having obtained a general equivalency diploma, and he is able to communicate in English. (Tr. 4228).

12. Considering Salata's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed between the August 31, 2011 alleged onset date and the September 30, 2015 date last insured.

> I. <u>August 31, 2011 alleged onset date to January 31, 2012:</u> Salata's ability to perform all or substantially all of the requirements of light work between August 31, 2011 and January 31, 2012 was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the undersigned asked the VE whether jobs existed in the national economy for an individual with Salata's age, education, work experience, and RFC. The VE testified that an individual with Salata's age, education, experience, and RFC during this period could work as a racker (429,000 positions nationally), ironer (251,000 positions nationally), and mill stenciler (251,000 positions nationally). Based on the testimony of the VE and consideration of Salata's age, education, work experience, and RFC, Salata was capable of making a successful adjustment to other work that existed in significant numbers in the national economy during this period. (Tr. 4228-29).
>
> II. <u>February 1, 2012 to December 9, 2013:</u> Salata's ability to perform all or substantially all of the requirements of light work between February 1, 2012 and December 9, 2013 was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the undersigned asked the VE whether jobs existed in the national economy for an individual with Salata's age, education, work experience, and RFC. The VE testified that an individual with Salata's age, education, experience, and RFC during this period could work as a: (1) marker (2 million positions nationally); (2) (2) checker I (72,000 positions nationally); (3) garment sorter (256,000 positions nationally); (4) ironer, sock (402,000 positions nationally); (5) folder (402,000 positions nationally); (6) potato chip sorter (537,000 positions nationally); (7) rag inspector (537,000 positions nationally); (8) bagger (537,000 positions nationally); (9) ironer (256,000 positions nationally); (10) folding machine operator (85,000 positions nationally); (11) mail clerk (86,000 positions nationally); (12) shipping-and-receiving weigher (72,000 positions nationally); (13) routing clerk (671,000 positions nationally); (14) flatwork tier (537,000 positions nationally); (15) microfilm mounter (209,000 positions nationally); (16) ticket seller (3.5 million positions nationally); (17) ticket taker (124,000 positions nationally). And these 17 positions could also be performed during the other two RFC periods. Based on the testimony of the VE and consideration of Salata's age, education, work experience, and RFC, Salata was capable of making a successful adjustment to other work that

existed in significant numbers in the national economy during this period. (Tr. 4229-30 & n.2).

Salata argued that individuals limited to light work, but who are limited to standing and walking up to *four hours* in an eight-hour period instead of six are limited to sedentary work under the Medical-Vocational Guidelines. No regulation or rule on point supports that argument, so a VE was consulted and relied upon, which is what the regulations direct when the extent of erosion of the occupational base is not clear. The regulations do not mandate that an ALJ must rule that a person is limited to performing at the lower exertional level when the person's limitations do not fit squarely and perfectly within one of the rules, but advises that VE services be used in such situations. And Salata's argument is contrary to the burden that needs to be met at Step Five of the sequential evaluation process – *i.e.*, whether the claimant is able to do other work. If the claimant is able to do other work, he is not disabled. The number of jobs represented by the 17 unskilled light occupations that the VE identified is a "significant number" of jobs that Salata was able to perform during this period. (Tr. 4230-33).

III. December 10, 2013 to the September 30, 2015 date last insured: Salata's ability to perform all or substantially all of the requirements of light work between August 31, 2011 and January 31, 2012 was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the undersigned asked the VE whether jobs existed in the national economy for an individual with Salata's age, education, work experience, and RFC. The VE testified that an individual with Salata's age, education, experience, and RFC during this period could work as a racker (429,000 positions nationally), ironer (251,000 positions nationally), and mill stenciler (251,000 positions nationally). Based on the testimony of the VE and consideration of Salata's age, education, work experience, and RFC, Salata was capable of making a successful adjustment to other work that existed in significant numbers in the national economy during this period. (Tr. 4233-34).

Based on these findings, the ALJ determined that Salata was not disabled from August 31, 2011 through September 30, 2015 and denied Salata's claim. (Tr. 4234).

V. **Law & Analysis**

   A. **Standard of Review**

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C.

9

§ 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is not a high threshold for sufficiency. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. Aug 7, 2020) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)). Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones*, 336 F.3d at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets this low standard for evidentiary support. *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783 ("It is not our role to try the case de novo." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical

10

bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

### B. Step Five Disability Determination

Salata argues that the ALJ's "not disabled' finding at Step Five was not supported by substantial evidence. ECF Doc. 14 at 9-13. Specifically, Salata contend that the VE's testimony

11

– that he could perform only 20 of the 1,572 unskilled, light occupations for the first and second RFC period, only 17 of the unskilled light occupations for the third RFC period, and less than 50% of unskilled, sedentary occupations – should have resulted in a finding that he was disabled under the Medical-Vocational Guidelines. ECF Doc. 14 at 11-13. Salata asserts that the Guidelines directed a "disabled" finding for a 50-year-old with his education and experience when such an individual was unable to perform the full range of unskilled sedentary work. ECF Doc. 14 at 12-13. Salata reasons that, because the occupational base available to him is less than that of a category that would be considered disabled under the Guidelines, the Guidelines would also direct a finding that he was disabled. ECF Doc. 14 at 13. Salata also argues that "[v]ocational expert testimony is not substantial evidence to support the Commissioner's conclusion at Step 5 of the sequential evaluation." ECF Doc. 14 at 13.

The Commissioner responds that the ALJ applied proper legal standards, and that substantial evidence supported the ALJ's conclusion that he was not disabled. ECF Doc. 16 at 5-9. The Commissioner argues that Salata has conflated the number of "occupations" identified by the VE with the number of "jobs" within those occupations. ECF Doc. 16 at 6. The Commissioner contends that the total jobs represented by the occupations that the VE identified were sufficient for the ALJ to conclude that Salata had the RFC to perform a significant number of jobs existed in the national economy. ECF Doc. 16 at 6-8.

In his reply brief, Salata argues that the Guidelines should have directed a finding that he was disabled because the occupational base that the VE said he could perform was closer in size to the sedentary occupational base. ECF Doc. 17 at 2-3. And, because the occupational base available to Salata was smaller than the size of the occupational base for a category that the

12

Guidelines would direct was "disabled," the an application of the Guidelines framework should have resulted in a finding that he was disabled. ECF Doc. 17 at 3-4.

At the final step of the sequential analysis, the burden shifts to the Commissioner to produce evidence as to whether the claimant can perform a significant number of jobs in the national economy. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002); 20 C.F.R. § 404.1520(a)(4)(v). An ALJ may determine whether the claimant has the ability to perform work in the national economy by applying the medical-vocational guidelines. 20 C.F.R. § 404.1569; 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00. The medical-vocational guidelines establish matrices that correlate certain variables—including the claimant's RFC, age, educational background, and previous work experience – with the claimant's exertional capacity. *See generally* 20 C.F.R. Pt. 404, Subpt. P, App. 2. When these variables are entered into the appropriate matrix, a finding of disabled or not disabled is directed. *Id.*

Nevertheless, the medical-vocational guidelines "do not cover all possible variations of factors." 20 C.F.R. § 404.1569. When a claimant's particular characteristics do not coincide with a rule's corresponding criteria, the medical-vocational guidelines do not direct a conclusion of disabled or not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a), (d). When a claimant's exertional level falls between two rules, which would direct opposite conclusions ("not disabled" at the higher exertional level and "disabled" at the lower exertional level), the ALJ should consult a vocational expert or specialist to determine whether the available occupational base more closely represents the category that would result in a "disabled" or "not disabled" finding. SSR 83-12, 1983 SSR LEXIS 32, at *5-6 (1983); *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010). And "[a]s long as the VE's testimony is in response to an accurate hypothetical, the ALJ may rely on the VE's testimony to find that the claimant is

13

able to perform a significant number of jobs," and, therefore, not disabled. *Anderson*, 406 F. App'x at 35 (citing *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)).

In *Nejat v. Comm'r of Soc. Sec.*, the Sixth Circuit concluded that a VE's identification of a single representative occupation (representing a total of 2,000 jobs locally) was sufficient for an ALJ to conclude that the claimant was able to perform a significant number of jobs. 359 F. App'x 574, 579 (6th Cir. 2009) (noting that two of the three representative occupations identified by the VE were eliminated based on the claimant's limitations). And an occupational base representing fewer than 1,000 regional jobs can be sufficient to support the conclusion that a claimant can perform a significant number of jobs. *Anderson*, 406 F. App'x at 35 (citing *Martin v. Comm'r*, 170 F. App'x 369, 376 (6th Cir. 2006) (870 jobs); *Stewart v. Sullivan*, 904 F.2d 708, at *3 (6th Cir. 1990) (125 jobs)).

The ALJ applied proper legal standards in determining that Salata was not disabled at Step Five. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. The ALJ complied with the regulations by determining first whether the Medical-Vocational Guidelines would direct a "not disabled" or "disabled" finding. 20 C.F.R. § 404.1569; 20 C.F.R. Pt. 404, Subpt. P, App. 2; (Tr. 4228-34 & n.2). Because the ALJ determined that Salata could perform a reduced range of light work at all relevant periods, rather than the full range of work of any guidelines category, the ALJ – properly – relied on testimony and a report from a vocational expert to determine whether Salata could perform a significant number of jobs in the national economy. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a), (d); SSR 83-12, 1983 SSR LEXIS 32, at *5-6; (Tr. 4228-34 & n.2). In doing so, the ALJ – properly – relied on the VE's testimony to determine whether the light work available to Salata during the second RFC period represented an occupational base that was so eroded that Salata should be considered capable of performing only sedentary work. SSR 83-12,

14

1983 SSR LEXIS 32, at *5-6 (1983); *Anderson*, 406 F. App'x at 35; (Tr. 4230-33). The ALJ explained that the occupational base was not so eroded based on the VE's testimony that Salata could perform 17 occupations, representing a significant number of jobs in the national economy. SSR 83-12, 1983 SSR LEXIS 32, at *5-6 (1983); *Anderson*, 406 F. App'x at 35; (Tr. 4230-33). The ALJ also – correctly – explained that the regulations did not require her to mechanically apply a lower-category guidelines rule in such circumstances, but permitted her to rely on the VE's testimony to reach the conclusion that she reached. SSR 83-12, 1983 SSR LEXIS 32, at *5-6 (1983); *Anderson*, 406 F. App'x at 35; *Felisky*, 35 F.3d at 1036; (Tr. 4230-33).

Substantial evidence also supported the ALJ's conclusions. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. Because the ALJ's hypothetical questions accurately represented her ultimate RFC findings, findings Salata has not challenged, the VE's testimony was substantial evidence support the ALJ's conclusion that Salata was able to perform a significant number of jobs in the national economy. *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013) (unpublished) (stating that the ALJ's hypothetical question must "accurately portray[] a claimant's vocational abilities and limitations"). *Compare* (Tr. 4292-94), *with* (Tr. 4214-16). Further, the VE's testimony provided substantial evidence to support the ALJ's conclusion that the occupational base for light work was not so eroded that Salata should be found capable of performing only sedentary work. Such evidence included the VE's testimony that Salata could perform: (1) 20 occupations, representing a total of 11,214,000 jobs during the first and third RFC periods; and (2) 17 occupations, representing a total of 10,283,000 jobs during the second RFC period. (Tr. 4293-97, 4698). And such figures are within the range of available jobs that the Sixth Circuit has concluded are "significant" within the meaning of the Social Security Act.

15

*See Nejat*, 359 F. App'x at 579; *Anderson*, 406 F. App'x at 35; *Martin*, 170 F. App'x at 376; *Stewart* , 904 F.2d 708, at *3.

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence in her Step Five analysis, the ALJ's decision to find Salata "not disabled" at Step Five fell within the Commissioner's "zone of choice" and cannot be second-guessed by this court. *Rogers*, 486 F.3d at 241; *Biestek*, 880 .3d at 783; *Mullen*, 800 F.2d at 545. Accordingly, the ALJ's finding that Salata was not disabled must be AFFIRMED.

## VI. Conclusion

Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, the Commissioner's final decision denying Salata's application for DIB is AFFIRMED.

**IT IS SO ORDERED.**

Dated: March 2, 2021

Thomas M. Parker
United States Magistrate Judge